UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

N⁰ 07 Civ. 7847 (RJS)
_____

A<small>NTHONY</small> R<small>IVERA</small>,

                Plaintiff,

<small>VERSUS</small>

M<small>ICHAEL</small> C<small>ARROLL</small>, *et al.*,

                Defendants.

_____

MEMORANDUM AND ORDER
August 3, 2009
_____

R<small>ICHARD</small> J. S<small>ULLIVAN</small>, District Judge:

Plaintiff Anthony Rivera brings this action pursuant to 42 U.S.C. §§ 1981, 1983, 1985, and state law alleging civil rights violations and other misconduct by nine New York State employees.[1] Specifically, Plaintiff brings federal claims for unlawful discrimination, civil conspiracy, cruel and unusual punishment, deliberate indifference, and assault, as well as related state-law claims.

Defendants move to dismiss the Second Amended Complaint ("SAC") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's claims are insufficiently pleaded and barred by principles of absolute and qualified immunity. For the

---

[1] Plaintiff names as Defendants one employee of the New York court system, Senior Court Clerk Michael Carroll, and eight employees of the New York State Division of Parole ("DOP"): Senior Parole Officer Derek E. Murphy, Facility Parole Officer Robert J. Butera, Parole Officer Linda Banks Spence ("Spence"), Agency Program Aide Charlotte A. Wright, Parole Office Taylor, Senior Administrative Analyst Donna J. Bleichert, Facility Parole Officer I F. Welch, and Field Parole Officer II F. Marlenga (collectively, the "DOP Defendants"). The Court notes that Defendant Taylor's first name is not provided in the SAC or the additional materials considered in connection with the instant motion.

reasons set forth below, Defendants' motion is granted in part and denied in part.

I. BACKGROUND[2]

The basic theory of Plaintiff's claims is that Defendants manipulated the calculation of his prison term in an attempt to detain him beyond the proper release date of August 9, 2006 until December 8, 2006. Specifically, Plaintiff contends that Defendant Carroll, as an employee of the New York courts, failed to instruct the New York City Department of Corrections ("DOCS") that Plaintiff's sentence was to run concurrently with his pending term of parole supervision. Plaintiff further alleges that the DOP Defendants falsified dates on documents relating to his detention and parole supervision, thereby intentionally miscalculating the Maximum Expiration Date ("MED") of his sentence in order to prolong his term of confinement.

A. Facts

On July 3, 2001, Plaintiff was convicted on a drug possession charge and sentenced to a prison term of two to four years (the "2001 conviction"). (SAC ¶ 10.) The sentence for the 2001 conviction was to expire no later than March 6, 2005. (*Id.* ¶ 10; *see also id.* Ex. A at 2.) On February 21, 2002, after completing a six-month boot camp program, Plaintiff was released under parole supervision. (*Id.* ¶ 11.)

Plaintiff violated the terms of his parole as a result of his March 8, 2006 arrest and March 21, 2006 guilty plea to assault in the third degree (the "2006 conviction"). (*Id.* ¶¶ 14, 18.) On June 29, 2006, Plaintiff was sentenced for the 2006 conviction. (*Id.* ¶ 18.) He alleges that he received a six-month sentence that was to run concurrently with the unexpired term of incarceration for the 2001 conviction. (*Id.*)

Plaintiff's claims are based on the manner in which the sentence on the 2006 conviction was implemented. First, Plaintiff alleges that Defendant Carroll, the Senior Court Clerk responsible for processing the order memorializing his sentence, "improperly failed to communicate . . . to the [DOP] Defendants . . . the fact that [P]laintiff['s] new sentence was to run concurrently with his parole." (*Id.* ¶ 19.) Plaintiff's sentence "was then allegedly miscalculated by one, some, or all of the [DOP] Defendants." (*Id.* ¶ 20.)

Second, Plaintiff alleges that Defendants Murphy and Spence falsified an April 25, 2006 Violation of Release Report relating to the conduct underlying the 2006 conviction. (*Id.* ¶ 15.) Specifically, Plaintiff alleges that Murphy and Spence altered the date of his parole violation from March 8, 2006 — the date of his arrest for assault — to April 8, 2006. (*Id.*) Plaintiff alleges that he could not have violated his parole on April 8, 2006 because he was incarcerated at that time. (*Id.*) According to Plaintiff, the misinformation led to "additional alterations of dates and

---

[2] For the purposes of this motion, the facts alleged in the SAC are presumed to be true, and the Court draws all reasonable inferences in Plaintiff's favor. *See Marsh v. Cabrini Med. Ctr.*, No. 08 Civ. 5405 (RJS), 2009 WL 1726331, at *2 (S.D.N.Y. Apr. 6, 2009). The Court cites only those facts that are relevant to the instant motion.

In the SAC, "[a]ll claims against [Defendant] F.P.O. II D. Amend . . . [were] withdrawn." (*See* SAC ¶ 1.) In addition, as Plaintiff acknowledges in the SAC, Defendant Bleichert is deceased. (*See id.* ¶ 22.) Pursuant to Federal Rule of Civil Procedure 25(a), Plaintiff's claims against Bleichert are therefore dismissed. *See, e.g., Gross v. Waywell*, No. 08 Civ. 9498 (VM), 2009 WL 1765766, at *1 n.1 (S.D.N.Y. June 16, 2009) ("An action against a deceased defendant abates unless the Court authorizes the substitution of another party.").

2

miscalculation of [his MED] to . . . September 11, 2006." (*Id.*)

Third, Plaintiff alleges that on July 20, 2006, Defendant Wright sent to Defendant Bleichert a "System Inbasket Print" containing misinformation. (*Id.* ¶ 22.) Plaintiff contends that Wright "inaccurately chang[ed] [P]laintiff's 'start date' to July 5, 2006," and, as a result, incorrectly listed his MED as December 8, 2006. (*Id.*) Five days later, on July 25, 2006, an unspecified DOP employee conducted a "Legal Date Computation" that also incorrectly indicated that Plaintiff's MED was December 8, 2006. (*Id.* ¶ 23.)

Finally, Plaintiff alleges that on an unspecified date he wrote a letter to Defendant Wright requesting "attention to the constant adjustment to his [MED]." (*Id.* ¶ 24.) On August 1, 2006, Defendant Wright allegedly responded to the letter by "refus[ing] to investigate [his] claim." (*Id.*) Additionally, Plaintiff contends that he submitted an "Inmate Call-Out Slip" requesting an interview with Defendant Butera to discuss the alleged MED miscalculation. (*Id.* ¶ 25.) On August 31, 2006, Defendant Butera allegedly denied Plaintiff's request. (*Id.*)

In sum, according to Plaintiff, the DOP Defendants repeatedly denied his requested reevaluation of the December 8, 2006 MED — a date which Plaintiff contends indicated that his sentence for the 2006 conviction was not running concurrently with his remaining term of parole for the 2001 conviction in accordance with the sentencing judge's instructions. (*Id.* ¶ 26.)

Prior to September 14, 2006, Plaintiff alleges that Defendant Butera recalculated Plaintiff's MED. (*Id.* ¶ 28.) Plaintiff further alleges that, according to Defendant Butera's recalculation, Plaintiff's MED was August 11, 2006. (*Id.*) On September 21, 2006, Defendant Butera allegedly sent a communication to Defendant Bleichert regarding the recalculation. (*Id.* ¶ 28.) On September 22, 2006, Defendant Butera executed a "Parole Jail Time Certificate," crediting Plaintiff with 133 days of jail time and thereby shortening the remainder of his sentence. (*Id.* ¶ 30.) Plaintiff alleges that further recalculation by unknown employees of New York State led to a determination that Plaintiff's MED was August 9, 2006. (*Id.* ¶ 31.)

On September 25, 2006, Plaintiff was released from custody. (*Id.* ¶ 32.) Plaintiff contends that Defendants Marlenga and Welch attempted to cover up his prolonged detention by submitting a Memorandum to DOP's Central Offices on September 27, 2006, falsely stating that Plaintiff had been released on August 9, 2006 in accordance with his MED. (*Id.* ¶ 33.)

B. Procedural History

On September 6, 2007, Plaintiff commenced this action against the City of New York, the DOCS, and five John Doe Defendants. (Doc. No. 2.) The Defendants named in the initial Complaint filed an Answer on November 13, 2007. (Doc. No. 3.) Plaintiff thereafter filed an Amended Complaint against the current Defendants on March 7, 2008, and, upon consent of the parties, the Court dismissed Plaintiff's claims against the City of New York, the DOCS, and

3

the five John Doe Defendants on April 23, 2008. (Doc. Nos. 10, 12.)

On July 28, 2008, Plaintiff filed the Second Amended Complaint (Doc. No. 15), which Defendants Carroll, Murphy, Butera, Spence, Wright, Taylor, Welch, and Marlenga moved to dismiss on December 3, 2008 (Doc. No. 18).³ Plaintiff filed his opposition on January 12, 2009, and Defendants submitted a reply brief on January 22, 2009. (Doc. Nos. 23, 25.)

II. STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must draw all reasonable inferences in Plaintiff's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "[f]actual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Therefore, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949.

Ultimately, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Applying this standard, if Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

III. DISCUSSION

According to Plaintiff, Defendants acted in concert to manipulate his release date, which resulted in him being detained for forty-seven days beyond the end of his sentence. Plaintiff contends that Defendants' conduct violated (1) his right to be free from unreasonable searches and seizures under the Fourth Amendment (SAC ¶ 42(a)), (2) his due process rights under the Fifth and Fourteenth Amendments (*id.* ¶¶ 42(a), 42(b)), (3) his right to be free from cruel and unusual punishment under the Eighth Amendment (*id.* ¶ 42(b)), and (4) his right to be free from slavery under the Thirteenth Amendment (*id.* ¶ 42(c)).

Based on these allegations, Plaintiff seeks compensatory and punitive damages for, *inter*

---

³ In his opposition brief, Plaintiff argues that "[t]he court must deny Defendant[s'] Motion to Dismiss as the time for the motion to dismiss has passed." (Pl.'s Mem. 12.) This argument is unavailing, however, because in a November 20, 2008 Order, the Court expressly granted Defendants permission to file the instant motion. (Doc. No. 17.)

4

*alia*, embarrassment, humiliation, loss of liberty, loss of income, emotional distress, and mental anguish, all of which he claims resulted from Defendants' alleged misconduct. (*Id.* ¶ 42(d)-(i).)

Defendants move to dismiss all of the claims set forth in the SAC. First, they argue that Defendants Carroll, Wright, and Butera are immune from Plaintiff's claims. (Defs.' Mem. 14-19.) Second, they argue that Plaintiff's allegations fail to raise a plausible inference that any of them are liable for the alleged constitutional violations. (*Id.* 4-14.) Third, they argue that the SAC is fatally defective for failing to allege personal involvement by each Defendant. (*Id.* 19-20.) The Court addresses each of these arguments in turn.

A. Absolute Immunity

Defendant Carroll asserts that Plaintiff's claims against him for inaccurately preparing Plaintiff's commitment order are barred by the doctrine of absolute judicial immunity. (*See* Defs.' Mem. 15-16.) For the reasons set forth below, the Court agrees and concludes that Defendant Carroll is absolutely immune from Plaintiff's claims.

"It is 'well-established that officials acting in a judicial capacity are entitled to absolute immunity against § 1983 actions, and this immunity acts as a complete shield to claims for money damages.'" *Bernstein v. New York*, 591 F. Supp. 2d 448, 462 (S.D.N.Y. 2008) (quoting *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999)). This immunity extends to administrative officers when they "'perform functions closely associated with the judicial process . . . .'" *Id.* (quoting *Roe v. Johnson*, 334 F. Supp. 2d 415, 423 (S.D.N.Y. 2004)). According to this functional approach, courts "grant[] absolute immunity when [a court] clerk is performing . . . a duty that inherently relates to resolving a dispute," *Peker v. Steglich*, No. 06 Civ. 6910 (SAS), 2007 WL 683796, at *2 (S.D.N.Y. Mar. 5, 2007), or an "act[] of a ministerial nature performed at the direction of a judge," *Reisner v. Stoller*, 51 F. Supp. 2d 430, 444 (S.D.N.Y. 1999).

Defendant Carroll is entitled to absolute immunity. He executed Plaintiff's commitment order in his official capacity as a clerk of the court and under the direction of the sentencing judge. *See Stubbs v. de Simone*, No. 04 Civ. 5755 (RJH) (GWG), 2005 WL 1079286, at *4 (S.D.N.Y. May 9, 2005) ("As the alleged wrongdoings of defendant[] . . . Westchester County Clerk were acts performed in [his] official capacit[y] as [an] employee[] of the Westchester County Court, under the direction of the Judges of that Court, plaintiff's claims against [him] are foreclosed by absolute immunity . . . ."); *Humphrey v. Court Clerk for the Second Circuit*, No. 08 Civ. 363 (DNH) (DEP), 2008 WL 1945308, at *2 (N.D.N.Y. May 1, 2008) (granting court clerk absolute immunity for "administrative functions . . . undertaken pursuant to the explicit direction of a judicial officer"). The act of executing the order was an integral part of the judicial process because it sought to memorialize a decision of the sentencing court in accordance with its regular practices. *See Pikulin v. Gonzalez*, No. 07 Civ. 412 (CBA), 2007 WL 1063353, at *2 (E.D.N.Y. Apr. 5, 2007) ("Absolute judicial immunity extends to court clerks who are performing tasks 'which are judicial in nature and an integral part of the judicial process' . . . including the Clerk's Office activities of filing

and docketing legal documents . . . ." (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997))). Accordingly, Plaintiff's claims against Defendant Carroll are dismissed.

### B. Qualified Immunity

Defendants Wright and Butera contend that Plaintiff's claims against them should be dismissed "under the doctrine of qualified immunity because it was objectively reasonable for them to believe [that] their actions in calculating Plaintiff's sentence dates were lawful." (Defs.' Mem. 18.) For the reasons set forth below, the Court concludes that Defendants Wright and Butera are not entitled to qualified immunity.

"'The doctrine of qualified immunity shields government employees acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their conduct violated clearly established rights of which an objectively reasonable official would have known.'" *Peterson v. Tomaselli*, No. 02 Civ. 6325 (DC), 2003 WL 22213125, at *5 (S.D.N.Y. Sept. 29, 2003) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996)). "Even when a plaintiff's federal rights are well-defined, a defendant may successfully claim qualified immunity 'if it was objectively reasonable for the public official to believe that his acts did not violate those rights.'" *Id.* (quoting *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991)).

However, Defendants Wright and Butera are not entitled to qualified immunity at the pleadings stage of this litigation. "Given the factual nature of [the] qualified immunity inquiry, . . . it is [not] appropriate to recognize the defense on [this] motion to dismiss." *Meserole St. Recycling, Inc. v. City of New York*, No. 06 Civ. 1773 (GEL), 2007 WL 186791, at *8 (S.D.N.Y. Jan. 23, 2007). According to the SAC, both Defendants were made aware of the alleged miscalculation of Plaintiff's MED by Plaintiff's August 2006 interview request and letter, but nevertheless failed to correct Plaintiff's release date for nearly a month. (*See* SAC ¶¶ 24, 25, 32.) Assuming the truth of these allegations, it cannot be said that reasonable officials would believe it permissible to allow Plaintiff to remain in custody beyond his release date. *See Brown v. Coughlin*, 704 F. Supp. 41, 45 (S.D.N.Y. 1989) ("Failure to act while [the defendant] remained imprisoned beyond his release date is not conduct protected by qualified immunity."). Accordingly, Defendants Wright and Butera are not entitled to qualified immunity.

### C. Section 1983

"'Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere.'" *Deniran v. Mattingly*, No. 07 Civ. 6159 (RJS), 2009 WL 857621, at *5 (S.D.N.Y. Mar. 31, 2009) (quoting *Duamutef v. Morris*, 956 F. Supp. 1112, 1115 (S.D.N.Y. 1997)). "'To prevail on a claim under section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States] (2) by a person acting under the color of state law.'" *Id.* (alteration in original) (quoting *Williams v. City of New York*, No. 07 Civ. 3764 (RJS), 2008 WL 3247813, at *2 (S.D.N.Y. Aug. 7, 2008)). "To withstand a motion to dismiss, a § 1983 complaint must therefore contain specific allegations of fact indicating a deprivation of constitutional

6

rights. . . . [T]he court will 'dismiss a complaint that consist[s] of nothing more than naked assertions, and set[s] forth no facts upon which a court could find a [constitutional] violation.'" *Peterson*, 2003 WL 22213125, at *4 (quoting *Mitchell v. Keane*, 974 F. Supp. 332, 338 (S.D.N.Y. 1997)).

Plaintiff's allegations must "demonstrate that the defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" *Selah v. New York State DOCS Comm'r*, No. 04 Civ. 3273 (DC), 2006 WL 2051402, at *4 (S.D.N.Y. July 25, 2006) (alteration in original) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001)). "The personal involvement required may be satisfied by showing the defendant (i) personally participated in the violation, (ii) was grossly negligent in supervising subordinates who committed wrongful acts, or (iii) exhibited deliberate indifference by failing to act on information indicating the unconstitutional acts were occurring." *Id*.

1. Unlawful Confinement Claim

In the SAC, Plaintiff alleges that Defendants intentionally miscalculated his MED and were deliberately indifferent to his adjustment requests. (*See e.g.*, SAC ¶¶ 34-36.) He contends that the resulting over-detention violated both his due process rights and the Eighth Amendment's prohibition of cruel and unusual punishment. (*See id.* ¶ 42.)

In their motion to dismiss, Defendants contend that: (1) Plaintiff has failed to allege knowledge of the over-detention by Defendants Carroll, Murphy, Spence, Taylor, Welch, and Marlenga; (2) Plaintiff has not adequately pleaded deliberate indifference by Defendants Wright and Butera; and (3) Plaintiff has not sufficiently alleged causation by Defendants Murphy and Spence. (Defs.' Mem. 6, 8, 9-10.)

For the reasons stated below, Plaintiff's claim relating to his alleged confinement beyond the termination of his sentence is dismissed as to all named Defendants except Defendant Butera.

"[A]n inmate has a liberty interest in being released upon the expiration of his maximum term of imprisonment." *Calhoun v. New York Div. of Parole Officers*, 999 F.2d 647, 653 (2d Cir. 1993). In addition, "[d]etention beyond the termination of a sentence can constitute cruel and unusual punishment if it is the result of 'deliberate indifference' to the prisoner's liberty interest." *Wright v. Kane*, 94 Civ. 3836 (JFK), 1997 WL 746457, at *4 (S.D.N.Y. Dec. 2, 1997) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)).

In order to make a claim under § 1983 for confinement beyond the term of imprisonment,

[P]laintiff first must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff

7

must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

*Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 163 (S.D.N.Y. 2007).

Plaintiff has adequately pleaded the three essential elements of his over-detention claim as to Defendant Butera. However, Plaintiff has not met this burden with respect to Defendants Murphy, Spence, Wright, Bleichert, Marlenga, Welch, and Taylor.

First, Plaintiff's request for an interview with Defendant Butera to discuss his MED (SAC ¶ 25) constituted sufficient warning of the risk that unwarranted punishment may be inflicted. *See Brown*, 704 F. Supp. at 44 (holding that a prisoner's "written protest telling [the defendant] that . . . [his release] date was wrong" was sufficient "to establish [that the defendant] knew of the constitutional violation"). Second, Defendant Butera allegedly denied Plaintiff's request and issued a Parole Jail Time Certificate nearly a month later. (SAC ¶¶ 25, 28.) The Court finds this delayed response to raise a plausible inference of deliberate indifference because Defendant Butera was "put on notice of a prisoner's dispute and then refused to investigate the claim of miscalculation."[4] *McCants v. Jones*, No. 98 Civ. 6337 (FE), 1999 WL 804009, at *3 (W.D.N.Y. Sept. 30, 1999) (internal quotations omitted); *see Selah*, 2006 WL 2051402, at *4 ("The personal involvement required may be satisfied by showing the defendant . . . exhibited deliberate indifference by failing to act on information indicating the unconstitutional acts were occurring."). Lastly, there is a sufficient causal connection at this stage between Defendant Butera's alleged failure to promptly investigate and recalculate Plaintiff's MED and the alleged over-detention. Put simply, had Defendant Butera's response been more prompt, Plaintiff might have been released sooner. *See Brown*, 704 F. Supp. at 44 (holding that a complaint alleging that "[a] state official with actual notice that a prisoner's recomputed release date is wrong . . . fail[ed] to obtain the paperwork necessary to discern the correct release date [and] caused the prisoner to be imprisoned beyond the end of his prison term . . . state[s] a section 1983 cause of action."). Accordingly, Plaintiff's unlawful confinement claim against Defendant Butera survives the instant motion to dismiss.

However, Plaintiff fails to allege sufficient facts to sustain an unlawful confinement claim against the remaining Defendants. First, there are no allegations that Defendants Murphy and Spence had knowledge of Plaintiff's over-detention. In the SAC, Plaintiff merely asserts that Murphy and Spence altered the date of his parole violation. (*See* SAC ¶ 15.) However, such an allegation is insufficient to demonstrate adequate notice to those Defendants that Plaintiff was being confined beyond his MED. To compensate for this deficiency,

---

[4] Although Defendant Butera's note on Plaintiff's "Inmate Call-Out Slip" refers Plaintiff to a prior correspondence to explain the allegedly incorrect MED (*see* SAC Ex. H), that correspondence is not before the Court in connection with the instant motion. Therefore, because the Court is limited to the complaint and materials attached thereto in ruling on a motion to dismiss, it draws the inference in Plaintiff's favor that Butera did not adequately investigate the alleged MED miscalculation about which Plaintiff complained.

8

Plaintiff relies upon the catchall allegation that Plaintiff made repeated requests to "the Parole Defendants." (*Id.* ¶ 26.) But, this conclusory allegation is insufficient to demonstrate that Defendants Murphy and Spence were aware of Plaintiff's alleged unconstitutional confinement. *See Selah*, 2006 WL 2051402, at *6 (dismissing a § 1983 claim where "[the] plaintiff [did] not allege[] with requisite specificity . . . that [the] defendants had actual or constructive notice of the alleged violations"); *see also Fletcher v. Goord*, No. 07 Civ. 707 (GLS) (GHL), 2008 WL 4426763, at *12 (N.D.N.Y. Sept. 25, 2008) (holding that the "plaintiff does not satisfy the first requirement of alleging facts plausibly suggesting that [the] [d]efendants . . . had knowledge" because "he has failed to allege such facts as . . . what form those written communications took[,] . . . when he sent those written communications, . . . and most importantly . . . what . . . his written communications said").

Second, Plaintiff fails to allege deliberate indifference by Defendants Murphy, Spence, Wright, and Bleichert. Because there is no allegation that Murphy and Spence had notice that Plaintiff was being detained beyond his MED, they cannot be said to have been deliberately indifferent to a plight of which they were not aware. Additionally, exhibit G of the SAC belies Plaintiff's allegation that Defendant Wright, "with deliberate indifference, refused to investigate plaintiff's claim."[5] (*Id.* ¶ 24.) Instead, upon receipt of Plaintiff's letter to her, Defendant Wright provided Plaintiff an explanation of why his MED was December 8, 2006, and instructed him about how to have it adjusted. Such a response does not rise to the level of deliberate indifference. *See Cunningham v. Dep't of Corr. Servs.*, No. 04 Civ. 5566 (CS), 2009 WL 1404107, at *1 (S.D.N.Y. May 20, 2009) (holding that allegations of deliberate indifference were insufficient where "the correspondence provided by [the] [p]laintiff suggests that [the defendant] responded to [the] [p]laintiff's complaints . . . ."); *Walker v. Donelli*, No. 08 Civ. 406 (FJS) (DRH), 2009 WL 973445, at *4 (N.D.N.Y. Apr. 9, 2009) ("[P]rompt communication and investigation into [the plaintiff's] claims belies any conclusory allegation that defendants were deliberately indifferent to [the plaintiff's] complaint."). An individual who takes prompt action to resolve a matter cannot be alleged to have been indifferent to it.

Third, while it is unclear from the SAC whether or not Defendants Marlenga and Welch had knowledge of Plaintiff's alleged over-detention prior to his release, the Court need not resolve that issue to dismiss the unlawful confinement claim lodged against them. Plaintiff only alleges that they attempted to cover up the violation after Plaintiff's release from custody by submitting a Memorandum falsely stating that he was released on time. (*Id.* ¶¶ 32, 33.) Therefore,

---

[5] Defendant Wright's response to Plaintiff's letter is properly considered because it is attached to the SAC as Exhibit G. *See Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 527 (S.D.N.Y. 2008) ("In addition to the factual allegations in the complaint, the Court may also consider any written instrument attached to it as an exhibit . . . ." (internal quotations omitted)).

Additionally, the Court need not accept as true Plaintiff's characterization of its content because that content contradicts such characterization. *See Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*, No. 05 Civ. 8510 (DAB), 2007 WL 438088, at *4 (S.D.N.Y. Feb. 8, 2007) ("[I]f the allegations of a complaint are contradicted by documents incorporated in the complaint, the documents control and the court need not accept the allegations of the complaint as true.")

9

the SAC fails to present facts constituting the necessary causal connection between Defendants Marlenga's and Welch's conduct and the unjustified detention alleged.

Finally, the SAC does not allege that Defendant Taylor was personally involved in the misconduct. In fact, his name only appears in the portion of the SAC naming the Defendants, and not in the substantive allegations set forth thereafter. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) ("It is well-settled that 'where a complaint names a defendant . . . but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'" (quoting *Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999))). Thus, Plaintiff alleges neither the essential elements of an unlawful confinement claim nor the required personal involvement with respect to Defendant Taylor. The claim against him cannot persist.

Accordingly, the unlawful confinement claim is dismissed as to Defendants Murphy, Spence, Wright, Marlenga, Welch, and Taylor. However, Plaintiff's motion is denied as to Defendant Butera.

2. Enslavement Claim

Plaintiff claims that the labor he conducted during the allegedly unlawful period of his detention constituted enslavement in violation of the Thirteenth Amendment. (*See* SAC ¶ 42(c).) Defendants move to dismiss the claim, arguing that labor while in prison is expressly exempt from the constitutional prohibition. (Defs.' Mem. 14.) The Court agrees. Plaintiff's enslavement claim is without merit.

The text of the Thirteenth Amendment states: "Neither slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted*, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. Amend. XIII, § 1 (emphasis added). "'[T]o state a claim under the Thirteenth Amendment, a plaintiff must demonstrate that he has been subjected to compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.'" *Muhmmaud v. Murphy*, No. 08 Civ. 1199 (VLB), --- F. Supp. 2d ----, 2009 WL 1929091, at *3 (E.D.N.Y. June 30, 2009) (internal citation omitted) (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)).

Plaintiff alleges neither that a burdensome work schedule tantamount to slavery was imposed upon him while detained, nor that Defendants forced him to perform the labor he alleges was unconstitutional. *See Rolle v. Garcia*, No. 04 Civ. 312 (LEK) (GHL), 2007 WL 672679, at *8 (N.D.N.Y. Feb. 28, 2007) (dismissing a prisoner's § 1983 claim based on alleged violation of the thirteenth amendment where "[the plaintiff] . . . offered no allegation that . . . [the] [d]efendant in any way caused [the] [p]laintiff to work on the road crew"). Therefore, Plaintiff does not allege facts sufficient to constitute enslavement or involuntary servitude in violation of the Thirteenth Amendment.

Furthermore, by its terms, the amendment does not prohibit "involuntary servitude imposed as legal punishment for a crime." *United States v. Kozminski*, 487 U.S. 931, 943 (1988). Despite Plaintiff's argument that labor conducted while wrongfully detained is

10

not so exempt (Pl.'s Mem. 19), the exclusion of inmate labor persists even where a prisoner's conviction is reversed or otherwise shown to have been improper. *See Omasta v. Wainwright*, 696 F.2d 1304, 1305 (11th Cir. 1983) ("[W]here a prisoner is incarcerated pursuant to a presumptively valid judgment and commitment order . . . the thirteenth amendment's prohibition . . . is not implicated . . . even though the conviction may be subsequently reversed.")  Therefore, Plaintiff's claim under the Thirteenth Amendment also fails because he was duly convicted of a crime and committed to jail pursuant to a valid judgment, despite the alleged failure to run his sentence concurrently with his parole. Accordingly, Plaintiff's enslavement claim is dismissed.

### 3. Assault Claim

Plaintiff claims that the "continual strip searches" to which he was subjected during his period of alleged over-detention amounted to unconstitutional assault. (*See* SAC ¶ 47.) Defendants argue that Plaintiff's assault claim should be dismissed because "there [are] absolutely no allegations that any defendant took any action whatsoever that would give rise to such a claim." (Defs.' Mem. 13.) The Court agrees and dismisses Plaintiff's assault claim for failure to allege personal involvement by Defendants in the allegedly unconstitutional searches.[6]

Plaintiff has not alleged that any of the named Defendants were personally involved in conducting the strip searches he contends were unconstitutional.  *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983."); *Rodriguez v. Phillips*, No. 91 Civ. 4797 (KMW), 1994 WL 273370, at *4 (S.D.N.Y. June 16, 1994) ("[The] [p]laintiff['s] [claim for] . . . violation of [42] U.S.C. § 1983, based on the allegedly unconstitutional strip search conducted [in] [j]ail . . . must fail because plaintiff[] ha[s] not shown that any of the defendants . . . participated in the alleged search.").  Nor does Plaintiff allege that any of the named Defendants negligently supervised the carrying out of those searches or failed to take action upon being made aware that such searches were occurring.  Therefore, the "'failure to set forth facts pertaining to such personal involvement results in a fatally defective [second amended] complaint.'" *Davis v. City of New York*, No. 00 Civ. 4309 (SAS), 2000 WL 1877045, *8 (S.D.N.Y. Dec. 27, 2000) (quoting *Murphy v. Neuberger*, No. 94 Civ. 7421, 1996 WL 442797, at *3 (S.D.N.Y. Aug. 6, 1996)).  Accordingly, Plaintiff's assault claim is likewise dismissed pursuant to Rule 12(b)(6).

---

[6] To the extent that Plaintiff asserts a related state-law tort claim for assault, the action is barred by New York Executive Law § 259-q, which states in relevant part:  "No civil action shall be brought in any court of the state . . . against any officer or employee of the [State] [D]ivision [of Parole], in his personal capacity, for damages arising out of any act done . . . within the scope of the employment and in the discharge of the duties by such officer or employee."  N.Y. Exec. Law § 259-q; *see Sloane v. Getz*, No. 00 Civ. 4708 (DLC), 2001 WL 504879, at *5 (S.D.N.Y. May 10, 2001) ("Since the defendants were functioning as parole officers during their interaction with the plaintiff, the state law claims must be dismissed even if the defendants abused their offices and otherwise violated the plaintiff's rights during their interaction.").  Therefore, Plaintiff's state-law claim for assault is also dismissed.

D.  Section 1981

Plaintiff alleges that Defendants' efforts to detain him beyond the date of his release were "based on racial motivation."  (SAC ¶ 45.)  Defendants argue that Plaintiff fails to allege "racial or other invidious discriminatory animus on the part of defendants."  (Defs.' Mem. 12.)  The Court agrees and dismisses Plaintiff's discrimination claim because animus is a necessary element of claims under § 1981, which Plaintiff has failed to adequately plead.

"'To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements:  (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute [(*i.e.*, make and enforce contracts, sue or be sued, give evidence, etc.)].'"  *Younger v. City of New York*, 480 F. Supp. 2d 723, 733-34 (S.D.N.Y. 2007) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam)).

Plaintiff's § 1981 claim fails because "he alleged neither that he was a member of a racial minority nor that the Defendants[] . . . discriminated against him on that basis."  *Kashelkar v. Bluestone*, 306 Fed. Appx. 690, 692 (2d Cir. 2009).  The SAC does not even present conclusory allegations tending toward that effect.  *Cf Deniran*, 2009 WL 857621, at *5 ("[C]onclusory allegation[s] of discrimination, . . . without more, cannot withstand a motion to dismiss." (internal quotations omitted)).  Rather, for the first time in his opposition brief, Plaintiff asserts that Defendants "had animus underlying their actions, and that it was race or class-based."  (Pls.' Mem. 17.)  This argument, unsupported by allegations in the pleading, is insufficient to maintain a claim.  Accordingly, Plaintiff's § 1981 claim is dismissed.

E.  Section 1985

Plaintiff alleges that Defendants conspired with one another to detain him beyond the termination of his sentence.  (*See, e.g.*, SAC ¶ 36.)   Defendants argue, however, that "Plaintiff's claims of conspiracy are conclusory at best and are devoid of any factual detail."  (Defs.' Mem. 12.)  The Court agrees and therefore dismisses Plaintiff's conspiracy claim.

"Under § 1985, a plaintiff must allege:  '(1) a conspiracy; (2) for the purpose depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.'"  *Younger*, 480 F. Supp. 2d at 734 (quoting *Mian*, 7 F.3d at 1088).  Morever, "the plaintiff must prove . . . that the conspiracy was 'motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'"  *Richardson v. New York City Health and Hospitals Corp.*, No. 05 Civ. 6278 (RJS), 2009 WL 804096, at *18 (S.D.N.Y. Mar. 25, 2009) (quoting *Mian*, 7 F.3d at 1087).

The SAC alleges only generally that Defendants acted "in concert" without proffering any facts in support of a

12

to allege facts showing (1) that he is a member of a racial minority, and (2) that Defendants prolonged his prison term *because* of their animus toward that minority. *See id.* ("'[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed.'" (quoting *Dunlop v. City of New York*, No. 06 Civ. 433 (RJS), 2008 WL 1970002, at *4 (S.D.N.Y. May 6, 2008))). Accordingly, Plaintiff's claim under § 1985 is dismissed.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. Remaining to be resolved in this litigation is Plaintiff's claim for unlawful confinement against Defendant Butera. Plaintiff's claims against the other named Defendants are hereby dismissed pursuant to Rule 12(b)(6).

IT IS HEREBY ORDERED THAT counsel for Plaintiff and Defendant Butera shall submit a proposed case management plan and scheduling order by August 14, 2009. A template for the submission is available at http://www1.nysd.uscourts.gov/cases/show.php?db=judge_info&id=347.

The Clerk of the Court is respectfully directed to terminate the motion docketed as document number 18.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

\*\*\*

Dated: August 3, 2009
New York, New York

Plaintiff Anthony Rivera is represented by Michael R. Scolnick, P.C., 175 Burrows Lane, Blauvelt, New York 10913. Defendants are represented by Kevin R. Harkins, Assistant Attorney General of the State of New York, 120 Broadway, New York, New York 10271.

13